UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| HOWARD LOUIS McDONALD, JR.,<br>#854192, | )<br>)<br>) |
| Petitioner, | ) Case No. 1:15-cv-554<br>) |
| v. | ) Honorable Paul L. Maloney<br>) |
| KENNETH T. McKEE, | ) **REPORT AND RECOMMENDATION**<br>) |
| Respondent. | )<br>)<br>) |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner's convictions stem from his actions on November 8, 2011. He invaded the residence of his estranged wife, Sheila McDonald, attacked his father-in-law, Robert Roush, with a baseball bat, and used the baseball bat to kill his mother-in-law, Joan Roush. On September 21, 2012, a Calhoun County Circuit Court jury found petitioner guilty of first-degree murder, Mich. Comp. Laws § 750.316, first-degree home invasion, Mich. Comp. Laws § 750.110a, and assault with a dangerous weapon, Mich. Comp. Laws § 750.82. Petitioner was sentenced an habitual offender, third felony offense, to life imprisonment without the possibility of parole on his first-degree murder conviction, twenty to forty years' incarceration on his first-degree home invasion conviction, and 43 to 96 months' incarceration on his assault with a dangerous weapon conviction.

After unsuccessful attempts to overturn his convictions in Michigan's courts, petitioner filed his federal habeas corpus petition. He raises the following grounds, which were rejected by Michigan's courts:

I. Petitioner was denied effective assistance of counsel in violation of his Sixth Amendment rights when counsel failed to recognize that Dr. Haugen's opinion supported an insanity defense.

II. The trial court deprived petitioner of his right to testify.

(Amended Petition at 6-7, ECF No. 7, PageID.47-49).

On January 19, 2016, respondent filed his answer to the amended petition. Respondent argues that the petition should be denied for lack of merit. (Answer at 15-48, ECF No.12, PageID.106-139).

District Judge Paul L. Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief. Accordingly, I recommend that the petition be denied.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and

legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the

adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103).

"[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference.  If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

### A.    District Court Proceedings

Petitioner was charged with open murder, first-degree home invasion, and felonious assault.  He was also subject to an habitual offender notice, third felony offense. On February 15, 2012, he received a preliminary examination in district court. Judge John Hallacy bound over petitioner for trial in circuit court on all charges. (Preliminary Examination, 86-89, ECF No. 13-3, PageID.293-96).  The preliminary examination transcript reflects that petitioner had received a forensic evaluation and

that petitioner had been found competent to stand trial. (*Id.* at 3-5, PageID.210-12; *see also* Opinion, 1-2, ECF No. 13-13, PageID.547-64).

### B. Circuit Court Proceedings

On March 26, 2012, Judge James Kingsley granted defense counsel's motion for funds to hire a psychologist, Randy Haugen. (ECF No. 13-4). Petitioner's trial was scheduled to begin on July 10, 2012. (ECF No. 13-5, PageID.307). The court granted an adjournment, however, to accommodate Dr. Haugen's schedule. (ECF No. 13-6).

Petitioner's trial began on September 18, 2012, and it concluded on September 21, 2012, with the jury's verdict finding him guilty on all three charges: first-degree murder, first-degree home invasion, and assault with a dangerous weapon. (Trial Transcripts (TT I-TT IV), ECF No. 13-2, 13-8 to 13-10).

Sheila McDonald testified that she had filed for divorce and obtained a personal protection order prohibiting petitioner from entering her Cliff Street residence. On November 8, 2011, her father and mother, Robert and Joan Roush, came to her home to work on securing the doors and changing the locks. (TT I, 59-65, ECF No. 13-2, PageID.172-74). A few days earlier Ms. McDonald's parents had been at the house and repaired a door that petitioner had kicked in. They had installed new door locks, but the locks took different keys. On this trip, the plan was to fix the door locks so that they could be opened with a single key. (TT I, 65-66, 122, PageID.174, 188). Robert Roush unlocked the door, but stayed outside on the porch to take a telephone call from Sheila McDonald. Joan Roush went inside the house. (TT I, 128-29, PageID.189-90).

Mr. and Mrs. Roush had no idea that petitioner was inside. Mr. Roush never heard any scream from his wife. Mr. Roush was on the porch with his back towards the entrance. Petitioner rushed out, put Mr. Roush in a choke hold, and stated, "That's what you guys get for not letting me see J," referring to petitioner's child with Sheila McDonald. Petitioner attempted to choke Robert Roush and drag him into the house. Mr. Roush was able to break petitioner's hold, but petitioner came at him with a bat, screaming. Mr. Roush retreated across the yard to avoid being hit. (TT I, 130-38, PageID.190-92).

When petitioner had placed Mr. Roush in a choke hold, Roush's phone went flying out of his hand. (TT I, 136, PageID.191). When her father suddenly stopped talking and she heard what sounded like a scuffle, Sheila McDonald called 911. (TT I, 81-82, PageID.178).

Meanwhile, petitioner went back into the house, and Robert Roush went inside after him. The two men fought and Mr. Roush sustained a gash on his head, a cut on his hand, and three broken ribs, but he eventually prevailed. Petitioner was exhausted and he walked out the front door. Mr. Roush found his wife on the floor in a nearby room. She was bleeding from a head wound. He used the telephone in the house to call 911. (TT I, 138-60, PageID.192-97). Mr. Roush followed the dispatcher's instructions, put the land line telephone down without hanging up, and intended to go to his wife and check on her condition. He found that petitioner was back inside the house and he had the bat again. However, this time instead of attacking Mr Roush,

petitioner sat down briefly in a chair, then got up and told Mr. Roush to "have them come and put me in jail." (TT I, 160-61, PageID.197-98).

When petitioner went back outside, Mr. Roush was able to check on his wife's condition. She was unconscious and blood was flowing from the top of her head. When the dispatcher asked Mr. Roush to check on petitioner's location, Mr. Roush looked out a window and saw petitioner on his belly on the ground. He was waiting for the uniformed police officers to put him in handcuffs. (TT I, 162-65, PageID.198-99). Petitioner's jury heard the recording of Mr. Roush's 911 call. (TT II, 49-50, ECF No. 13-8, PageID.331).

When petitioner was handcuffed and sitting in the back of the patrol car he blurted out: "I'm going to jail for a long, long time." "Treat hem the way they've been treating me" and "I flipped today. I'm sorry. I had no choice. I made it real today." (TT II, 39-40, PageID.328).

When police entered the residence, they found Joan Roush on the floor in front of the couch in a pool of blood. The officers seized a baseball bat that had blood and hair on it. (TT I, 109-17, PageID.185-86). Petitioner's DNA was on the bat's grip and Joan Roush's blood and DNA were on the barrel end. (TT III, 32-60, ECF No. 13-9, PageID.356-63).

Joan Roush was taken to the hospital. (TT I, 87-88, 166, PageID.179, 199; TT II, 61, PageID.334). She was declared dead at 1:45 p.m. (TT II, 24, PageID.324). Her autopsy revealed that she had been hit at least eight times with a blunt object like a baseball bat. (TT II, 103-05, PageID.344-45).

Police found petitioner's shoes and sweatshirt. They found a basement window that appeared to have been petitioner's point of entry. The dirt was disturbed outside the window and some of it was carried into the house. (TT I, 74-77, 198, PageID.176-77, 206; TT II, 64-70, PageID.334-36).

Petitioner was taken into custody and read his *Miranda* rights. He elected to make a statement to the police. The jury saw and heard the video recording of the police interview. (TT II, 7-14, PageID.320-22). The video recording allowed petitioner to present his version of events without having to take the witness stand. Further, petitioner's attorney had obtained a ruling by the court long before the close of proofs that the contents of the video recording were sufficient to support a manslaughter instruction. (TT III, 6-7, PageID.350).

The defense called Dr. Haugen as an expert witness in the field of psychology. He testified regarding dissociative amnesia. (TT III, 57-60, PageID.363). Robert Roush was also called as a witness. (TT III, 60-68, PageID.363-65).

After the court had delivered the jury instructions, petitioner made an inquiry regarding representing himself and testifying. (TT III, 90, Page ID. 371). The court noted that petitioner had not represented himself and that his attorney had a trial strategy. Petitioner's story had been presented through the video recorded interview and if petitioner had been placed on the witness stand, cross-examination would have likely destroyed whatever credibility the jury may have given to the story that petitioner gave to the police. (TT III, 91-92, PageID.371). When petitioner then

suggested that he might fire his lawyer and represent himself in order to testify, the court responded that it was too late for that. (TT III, 94, PageID.372).

On September 21, 2012, the jury returned its verdict finding petitioner guilty of first-degree premeditated murder and felony murder, assault with a dangerous weapon, and first-degree home invasion. (TT IV, 3-6, ECF No. 13-10, PageID.382-85).

On October 19, 2012, Judge Kingsley held a sentencing hearing. (ECF No. 13-11). The judge sentenced petitioner as an habitual offender, third felony offense, to life imprisonment without the possibility of parole for the first-degree murder conviction, twenty to forty years' incarceration for the first-degree home invasion conviction, and 43 to 96 months' incarceration for the assault with a dangerous weapon conviction. (*Id.* at 15-16, PageID.403-04).

### C. Subsequent Proceedings

Petitioner's appellate counsel raised the same issues petitioner now raises in his habeas corpus petition. (ECF No. 13-13, PageID.479).

On February 27, 2014, Judge Kingsley conducted a *Ginther*[1] hearing. (Hearing Transcript (HT), ECF No. 13-12). He received testimony from Dr. Haugen and Attorney Michael Lind, petitioner's trial counsel. (HT, 7-43, PageID.412-48). Judge Kingsley rejected petitioner's claim of ineffective assistance of counsel, and the judge determined that there was no foundation for an insanity defense. Dr. Haugen agreed with the forensic examiner that petitioner was criminally responsible for his actions. Petitioner failed to establish that counsel's performance fell below an objective

---

[1] *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

standard of reasonableness. Petitioner failed to establish prejudice. The evidence against petitioner was "overwhelming." (HT, 49-61, PageID.454-66).

On July 31, 2014, the Michigan Court of Appeals rejected the arguments found in Grounds I and II, and it affirmed petitioner's convictions. (*See* Opinion, ECF No. 13-13, PageID.469-72; *see also People v. McDonald*, No. 313601, 2014 WL 3784343, at *1 (Mich. Ct. App. July 31, 2014)). The Court of Appeals held that there was no violation of petitioner's right to testify. Petitioner knowingly and voluntarily waived his right to testify in his defense. (Opinion at 2-3, PageID.470-71). The Court of Appeals applied the *Strickland* standard and held that there was no violation of petitioner's constitutional rights. (*Id.* at 3-4, PageID.471-72).

Petitioner sought leave to appeal to Michigan's highest court, raising the same grounds that were rejected by the Court of Appeals. (ECF No. 13-14, PageID.720). On March 31, 2015, the Michigan Supreme Court denied leave to appeal. (*Id.* at PageID.713).

On June 1, 2015, petitioner filed his habeas corpus petition. (ECF No. 1). On July 8, 2015, petitioner amended his petition.[2]

---

[2] Petitioner's Brief (ECF No. 7-1) is attached to his amended petition. His arguments invoking Michigan's constitution will not be addressed herein because federal habeas corpus relief is available only on the ground that petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2254(a).

## Discussion

### I.     Sixth Amendment

In Ground I, petitioner argues that he was denied effective assistance of counsel, in violation of his Sixth Amendment rights, when counsel failed to recognize that Dr. Haugen's opinion supported an insanity defense. (Amended Petition at 6, ECF No. 7, PageID.47; Petitioner's Brief at, 1-7, ECF No. 7-1, PageID.56-62).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The trial court rejected petitioner's claim of ineffective assistance of counsel for lack of merit. (HT, 49-61, PageID.454-66). The Michigan Court of Appeals also

rejected petitioner's claim that his trial counsel was ineffective for failing to assert an insanity defense. *People v. McDonald*, 2014 WL 3784343, at *3.

Because the Michigan's courts decided petitioner's claims of ineffective assistance of counsel on their merits, their decisions must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decisions applied *Strickland* incorrectly. Rather, petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[3] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

---

[3] The factual findings that petitioner's "trial counsel and Dr. Haugen specifically discussed [petitioner's] criminal responsibility, and that Dr. Haugen told counsel that he believed [petitioner] was criminally responsible for his actions" (*see* Opinion at 4, ECF No. 13-13, PageID.472) must be "presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has not carried his "burden of rebutting the presumption of correctness by clear and convincing evidence." (*Id.*).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. 1372, 1375-77 (2015); *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

I find that petitioner has not shown that the decisions of Michigan's courts rejecting his claim of ineffective assistance of trial counsel were "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review. 28 U.S.C. § 2254(d)(1).

## II.   Right to Testify

Ground II is petitioner's argument that the trial court deprived him of his right to testify. (Amended Petition at 7, ECF No. 7, PageID.48; Petitioner's Brief at 8-12, ECF No. 7-1, PageID.63-67).

The Sixth and Fourteenth Amendments guarantee every defendant in a state criminal trial "a right to testify himself, should he decide it is in his favor to do so." *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). " 'When a tactical decision is made not to have the defendant testify, the defendant's assent is presumed,' and if a defendant disagrees with this decision, he 'must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand.' " *Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)); *see Manoku v. Bauman*, No. 15-2039, 2016 WL 418408, at *3 (6th Cir. Feb 4, 2016).

Petitioner made the tactical decision to rely on his recorded statement to the police and claim dissociative amnesia rather than taking the witness stand and subjecting himself to cross-examination. (TT III, 89-94, ECF No. 13-9, PageID.371-72). Petitioner waited until after the close of proofs and the jury had received its instructions before making his suggestion that he might want to fire his lawyer and represent himself in order to testify. (TT III, 94, PageID.372).

The Michigan Court of Appeals found that petitioner knowingly and voluntarily waived his right to testify in his defense:

> [T]he record supports a finding that defendant knowingly and voluntarily waived his right to testify in his defense. *People v. Moore*, 164 Mich.App 378, 384; 417 NW2d 508 (1987). He consulted with his trial counsel regarding the decision to testify and acquiesced in his trial counsel's decision that he should not testify. . . . [H]e did not ask that proofs be re-opened. A defendant who waives a right may not then seek appellate review of a claimed deprivation of that right, because his waiver extinguished any error. *People v. Carter*, 462 Mich. 206, 215; 612 NW2d 144 (2000).

> Defendant next argues that the trial judge misinformed him as to his legal right to testify during the post jury instruction dialog and through that misinformation deprived him of the right to give testimony. The record does not support a finding that the trial court interfered in any way with defendant's right to testify. The defendant was clearly aware of his right to testify and that he had at least one, and possibly several, conversations with his counsel about testifying. Defendant was not coerced or intimidated by the trial court into waiving his right to testify, and the trial court did not improperly interfere with defendant's constitutional right to testify.

*People v. McDonald*, 2014 WL 3784343, at *2.

I find that petitioner has not shown that the decision of the Michigan Court of Appeals rejecting Ground II was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### III.   Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong. Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the petition be denied.

Dated:   February 23, 2017         /s/  Phillip J. Green
                                   United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).